RUTH BENNETT, Appellee, v. J. C. RYAN, Appellant.

1264

NOVEMBER 20, 1928.

*Stipp, Perry, Bannister & Starzinger* and *F. W. Ganoe,* for appellant.

*Baker & Doran,* for appellee.

EVANS, J.—The plaintiff, Ruth Bennett, was a minor 17 years of age at the time of the accident under consideration. On September 13, 1925, she was one of a party of four (two young men and two young ladies), riding on the single seat of a Ford roadster, which was driving north on Linn Street in the city of Boone. The defendant was driving westerly on First Street, which intersected Linn Street at right angles. The defendant's car, coming west on First Street, and the plaintiff's car, coming north on Linn Street, collided at the northwest corner of their intersection. The plaintiff was severely injured, and was confined to her bed for several weeks. Her physicians testified that she had made a good recovery, and would suffer no permanent injury. Before the beginning of her suit, she had received, pursuant to a purported settlement in full, the sum of $550. The verdict of the jury was adverse to her. The appeal is by the defendant from an order by the district court awarding the plaintiff a new trial.

We recognize a broad discretion of the district court in granting a new trial, and we have seldom reversed such an order. Such an order may be reversible, nevertheless. The defendant

has assigned a large number of errors, predicated upon rulings upon the trial. Manifestly, alleged error in rulings upon evidence and in instructions are not available to the defendant in support of his appeal. The verdict of the jury in his favor cured such, and rendered them nonprejudicial. If the verdict had been adverse to him, such erroneous rulings would be available to him in his demand for a new trial. The opportunity of a new trial has been afforded him upon the motion of the plaintiff. Whatever his grievance now, it must be found in the order of the court granting his adversary a new trial, and not in the previous procedure, which resulted in a favorable verdict. The foregoing should be qualified with the statement that, if the defendant was entitled to a directed verdict upon the merits, as disclosed in the record, this of itself would ordinarily negative the right of the plaintiff to a new trial. It is to this proposition that we direct our first attention. At the close of the evidence, the defendant moved for a directed verdict, both on the ground of a failure of proof of original liability of the defendant, and on the ground that a full settlement had been had, which settlement had not been successfully impeached. We consider first the latter ground.

The defendant carried liability insurance with the Travelers Insurance Company. This insurance company sought a settlement on behalf of the defendant. On December 1, 1925, Eddy, the agent of the insurance company, called upon the plaintiff and her mother at the home. He advised both the mother and the daughter of the purpose of the company, and requested them to prepare for negotiations at a later date. On December 21, 1925, he returned, and carried on negotiations primarily with the mother. At that time, she demanded $1,000 in settlement. This demand was not acceded to, but the negotiations resulted in an agreement upon $550, as the sum to be paid in full settlement. This sum included all items of expense incurred, and the further sum of $25 per week for twelve weeks, to compensate the mother for her services as nurse. Thereupon, Eddy received the receipt of both mother and daughter for the sum of $550 in full settlement, and issued to them the check of the insurance company for $550. Later in the day, Eddy discovered, in confer-

ence with his attorney, that this settlement would be ineffective, for want of a guardian of the plaintiff, and of the assent of the guardian to the settlement, and the approval thereof by the court. Thereupon, Eddy returned to the mother and daughter, and advised them of his discovery. He also made an appointment with the mother to meet him the following day at the office of his attorney. Pursuant to the appointment, she met Eddy at the attorney's office, where an application for guardianship was prepared and duly signed, and verified by her, and whereby the oral settlement of the day before was formally repeated and put in writing, and signed by her as guardian. Pursuant to her application, she was appointed guardian on December 22, 1925. The contract of settlement was submitted to a judge of the district court resident in Boone, for approval, and was duly approved. The check given by Eddy the day before was surrendered, and a new check drawn and delivered to Mrs. Bennett for the same amount, she receipting for the same as guardian. At this point, an irregularity occurred, in that the order of the district judge approving the settlement was not filed and entered of record until March 5, 1926. It was filed, however, and made of record on such latter date. The plaintiff's suit was begun on February 24, 1926. The suit purported to be brought by the mother, Agnes Bennett, as next friend of Ruth Bennett. At the trial, the defendant challenged the right of Agnes Bennett to maintain the suit as "next friend," rather than as "guardian." This challenge was ignored by the court. The plaintiff also challenged the validity of the guardianship proceedings, and of the settlement thereunder, on the ground, among others, that the order of the district judge had not been filed or entered of record in the court records until after the beginning of the suit. This challenge was also ignored.

We think that a claim of invalidity of the guardianship proceedings cannot be predicated upon mere delay in causing the order of approval of the district judge to be entered of record. The district judge had jurisdiction to make a valid order in vacation. Such order undoubtedly contemplated a filing and a record thereof. We think it true, also, that, upon the filing of said order, and the recording thereof in the probate records, it became effective as of December 22, 1925. And this

is so even though its effectiveness should be deemed suspended until such filing was made,—a question we do not now decide. The plaintiff also challenged the validity of the order approving the settlement, on the ground that all the papers in the proceeding, including the agreement of settlement, were signed by Agnes Bennett before her appointment was actually made. All the papers were signed in contemplation of the appointment of the guardian, and such appointment was immediately made, on the same day. In legal contemplation, the various instruments, including the appointment by the clerk, were simultaneous. All became effective at the same time.

The fact that Agnes Bennett brought her suit as "next friend," instead of "guardian," is not of controlling importance at this stage of the case. She was the guardian, and she was in court representing a ward. Strict formality and regularity required her to denominate herself "guardian." The court could, and probably should, have ordered an amendment accordingly. But the fact that the amendment was not made is not necessarily prejudicial to the defendant, nor is it available to the plaintiff as an avoidance of the guardianship proceedings.

This brings us to the question of the effect of the settlement and the approval thereof by the probate court. The defendant pleaded the settlement as a complete defense. The plaintiff, in reply, pleaded avoidance on the ground of fraud and misrepresentation. It appears also that the plaintiff filed an application in the guardianship proceeding in the probate court, asking to set aside the approving order of the court, and that a disapproving order be entered. Nothing appears to have been done, responsive to such application.

It is the present contention of the defendant that the settlement pleaded is conclusive upon the plaintiff on two grounds: (1) That no fraud or misrepresentation is disclosed in the record; (2) that the order of approval of the settlement is conclusive upon the plaintiff until set aside by appropriate procedure.

We think that each of these grounds must be sustained. In a careful reading of the evidence, we fail to find any evidence of fraud or misrepresentation in the settlement. The argument for plaintiff is that the papers, including the guardianship proceedings, were all prepared by the attorney of Eddy, and not by

the attorneys of plaintiff; that Eddy prevented the plaintiff from seeing her own attorneys; and that she therefore acted without advice, to her prejudice. It appears, however, that plaintiff had consulted her attorneys shortly following December 1, 1925, after the visit of Eddy, and was fully posted by them as to the nature and extent of her rights. She came to the office of Eddy's attorney on December 22d voluntarily. Her own attorneys had their office in the same building, and were, therefore, easily accessible in a mere moment.

We think, also, that the court order of approval of the settlement is an insurmountable obstacle to plaintiff's recovery. The legal requirement that such a contract of settlement by a guardian should be submitted to the probate court, or a judge thereof, has a twofold purpose, to say the least. Firstly, it is intended as a protection both to the guardian and the minor; secondly, it is intended as a method of enabling a binding contract to be made with third parties for the benefit of the minor. Clearly, third parties would not purchase the property of a minor, nor compose controversies over his legal rights, unless the contract of purchase or settlement could be rendered as binding upon the minor as upon the third party. The intent of the statute is that, when such a contract is presented to, and approved by, the probate court, it shall thereby become effective and binding upon the minor, and the third party may safely part with his consideration therefor. It goes without saying that the guardian must act in good faith in obtaining such an order, and that such order may be later set aside upon the ground of fraud or bad faith of the guardian in obtaining the same. The protection afforded to the guardian would thereby be lost.

It is doubtless equally true that such order may be set aside on the ground of the fraud of the third party. But unless the order of approval be thus set aside, it necessarily operates upon the guardian, the minor, and the third party. In this case, the order of approval is in full force and effect. If it is to be assailed, it must be so done in the probate court. The order can be set aside only in the probate court. The statute does not contemplate that the order of approval by the probate court may be overturned by the verdict of a jury in another proceeding. To say that a jury may disapprove that which the probate

court approves, would simply nullify the statute which fixes the authority and duty of the probate court. We have heretofore had occasion to consider the duty and authority of the probate court in such a case. *Hagy v. Avery*, 69 Iowa 434; *Kreamer v. Wendel*, 204 Iowa 20; *Kelly v. Chicago, R. I. & P. R. Co.*, 138 Iowa 273. In the *Hagy* case we said:

"This confers upon the guardian ample power to compromise a pending suit if the court sanctions and authorizes such a course. The only limit to the guardian's authority is that, before the compromise can be legally made, authority from the court must be obtained. This is not an adversary proceeding of the guardian against the ward, but, in seeking to obtain the requisite authority from the court, the guardian is subserving the interest of his ward. The petition to obtain such authority is filed in the ward's interest. Notice to him is not required, and it is not certain that the guardian, in the absence of fraud, would not have the power to compromise a pending action without obtaining authority from the court. The burden, however, in such case, would be on the guardian or other party to show that the compromise was in all respects fair, and for the best interest of the ward. However this may be, as the compromise was made in this case with the approval and under the authority of the court, it, in the absence of all evidence tending to show fraud or undue advantage, is legal, and binding on the defendant; and it is immaterial whether he was notified of the application made to the court in his behalf and in his interest or not. The fact that a judgment had been entered in said action is immaterial. The guardian had the power, under the direction of the court, to settle the pending litigation, whether a legal and binding judgment had or had not been entered."

To the same effect, see *Thompson v. Maxwell Land Grant & R. Co.*, 168 U. S. 451, from which case we quoted extensively in *Kreamer v. Wendel*. The plaintiff contends that an order of approval by the probate court is not an adjudication, and that for that reason it is not binding upon the parties in the present litigation. In support of this proposition the plaintiff relies upon the cited case of *Kelly v. Chicago, R. I. & P. R. Co.* As already indicated, the order of approval by the probate court is not necessarily a finality, but is subject to be reopened upon a

1270

showing of proper grounds. In the *Kelly* case, the order was set aside by the probate court. In the case before us, the order has not been set aside. We may say also that, if the evidence in this record were presented to the probate court in support of an application to set aside the order, it would, in our judgment, be insufficient to sustain such an application.. To put the most favorable interpretation upon the testimony of the plaintiff, the original liability of the defendant for this accident was doubtful in a high degree. This fact gives strong support to the fairness of the compromise and to the finding of the probate court that it was to the interest of the minor. In view of the foregoing, we reach the conclusion that the district court should have directed a verdict for the defendant. The jury having rendered such verdict, the error was cured. The verdict, therefore, should have been permitted to stand.

The order of the district court granting a new trial is, therefore,—*Reversed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.